1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHANA SENEKA,                          No.  2:20-cv-01621-TLN-CKD PS

12              Plaintiff,

13      v.                                  ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   COUNTY OF YOLO, et al.,

15              Defendants.

16

17          Plaintiff is proceeding pro se in this action and has paid the filing fee. (ECF No 1.)

18   Currently before the court are four motions to dismiss plaintiff's First Amended Complaint.

19   (ECF Nos. 8, 10, 11, and 12.)  For the reasons below, the court recommends granting the motions.

20   I.       INTRODUCTION

21          This action arises from a custody dispute over plaintiff's minor children.  Plaintiff

22   commenced this federal suit after a series of state administrative and judicial proceedings that

23   began in 2018.  In the 51-page First Amended Complaint, plaintiff names almost forty defendants

24   and chronicles nearly every way in which she believes she was wronged throughout the juvenile

25   dependency process.  The large number of defendants sued, coupled with plaintiff's failure to

26   separate her causes of action into distinct sections, makes the First Amended Complaint difficult

27   to navigate.  It is unclear which claims plaintiff intends to assert against which defendants, and

28

1    except in a few instances, it is unclear which wrongful acts are intended to support which claims.

2    As the defendants observed, the "lack of segregated claims for relief greatly handicaps legal

3    analysis." (ECF No. 12 at 11.)  Nevertheless, the court will endeavor to decipher the allegations

4    and arguments to rule on the defendants' motions to dismiss.

5          At the outset, it is helpful to categorize the defendants into groups.  Plaintiff has sued

6    various agencies and individuals at the state, city, and county levels of government.  At the state

7    level, plaintiff has sued the State of California, California Health and Human Resources,

8    California Department of Social Services, California Foster Care Ombudsperson, and the

9    Attorney General of California (collectively, "State Defendants").  At the city and county level,

10   plaintiff has sued Yolo County, the Yolo County Child Welfare Services ("CWS"), and the City

11   of Woodland Police Department (collectively, "Municipal Defendants"), as well as numerous city

12   and county employees: Marissa Green, April Godwin, Salaam Shabazz, Cate Giacopuzzi-Rotz,

13   Rebekah Heinenberger, Amanda Ekman, Jennie Pettet, Cori Chapin, Alexandria Nelson, Breanna

14   Kraft, Valerie Zeller, Karleen Jackowski, Meghan Morris, Erica Jimenez, Gina Shabazz,

15   Christina Maciel, Josefina Elliott, Brenda Gage, Josette Fair, Gregory Elliott, Stephen Guthrie,

16   Jeffrey Moe, Jen Magee, Gary Sandy, and Ken Hiatt (collectively, "City and County Officials").

17   Plaintiff has also sued the court-appointed attorneys who represented the parties during the

18   juvenile dependency proceedings: plaintiff's attorney, Whitney Kulp; plaintiff's husband's

19   attorney, Ashley Mooney; and plaintiff's minor children's attorneys, Natalie Moore and Mikaela

20   West (collectively, "Attorney Defendants").  Finally, plaintiff has sued her husband, Robin

21   Seneka.

22         The best map of the claims that plaintiff asserts is the caption of the First Amended

23   Complaint.  The caption refers to six asserted claims: (1) violations of civil rights under 42 U.S.C.

24   § 1983; (2) violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.

25   § 12132; (3) "Injunction for Removal of Civil Action" under 28 U.S.C. § 1446; (4) "Injunction

26   for Removal of Civil Action" under 28 U.S.C. § 1443; (5) California Code of Civil Procedure

27   § 397.5; and (6) "Injunction for Temporary and Preliminary Restraining Orders" under Federal

28   Rule of Civil Procedure 65.

1    The First Amended Complaint then proceeds with a 45-page section entitled "Statement

2    of Claim," in which plaintiff outlines the events that allegedly support her claims.  To briefly

3    summarize, plaintiff alleges that in July 2018, CWS began requesting an in-person interview with

4    plaintiff's minor children after plaintiff's estranged mother and estranged adult daughter made

5    "unsubstantiated and false claims" about plaintiff to CWS.  (ECF No. 5 ¶ 47.)  According to

6    plaintiff, this initiated a campaign of harassment against her by CWS, which ultimately led to

7    CWS obtaining and executing a warrant to "seize" the minors and remove them from plaintiff's

8    custody.  Immediately following the "seizure," a Woodland Police Department ("WPD") officer

9    detained plaintiff and drove her to the hospital to be temporarily committed and treated for

10   experiencing a mental health emergency.  Plaintiff was kept at the hospital for approximately two

11   weeks while being treated.  Thereafter, plaintiff's ability to interact with her children was limited

12   and supervised.  The juvenile dependency proceedings went adversely to plaintiff, and the minors

13   remained in the custody of their other family members.  Plaintiff appealed the custody decisions

14   and lost.  Throughout the entire process, plaintiff alleges that numerous social workers and police

15   officers violated her constitutional rights.

16   In October of 2020, four groups of defendants filed motions to dismiss (ECF Nos. 8, 10,

17   11, 12).  The motions were originally set for hearing on December 9, 2020.  That date was

18   subsequently continued to January 13, 2021 by agreement of the parties to allow plaintiff

19   additional time to respond. (ECF Nos. 19.)  Despite the continuance, plaintiff failed to respond to

20   or otherwise oppose defendants' motions.  Thus, the court vacated the January 13, 2021 hearing

21   and submitted the motions without oral argument.  (ECF No. 26.)  The court now considers the

22   motions.

23   **II.    LEGAL STANDARD**

24   The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

25   sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

26   1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the

27   absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police

28   Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to

relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

In ruling on such a motion, the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).  The court may also consider matters properly subject to judicial notice. Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007).

## III.    DISCUSSION

### A.    Requests for Judicial Notice

As a threshold matter, both the State Defendants and the Attorney Defendants ask this court to take judicial notice of certain documents to aid in deciding the motions to dismiss.  (ECF Nos. 8-2, 10-2.)  A district court may take judicial notice of a fact that is "not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  A court may therefore take judicial notice of court filings and other matters of public record.  Reyn's Pasta Bella LLC v. Visa

4

1   USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); see also Papai v. Harbor Tug & Barge Co., 67

2   F.3d 203, 207, n. 5 (9th Cir. 1995), rev'd on other grounds, 520 U.S. 548 (1997) ("Judicial notice

3   is properly taken of orders and decisions made by other courts and administrative agencies.")

4          The State Defendants ask that the court take judicial notice of a statement regarding the

5   procedure for submitting complaints about county agencies that provide Child Welfare Services,

6   which is from the California Department of Social Services' public website.  This statement is a

7   matter of public record with accuracy that can readily be determined.  It is therefore a proper

8   subject of judicial notice.  Similarly, the Attorney Defendants ask the court to take judicial notice

9   of court records from plaintiff's state court juvenile dependency proceedings, as well as public

10  records establishing that the Attorney Defendants' are licensed with the State Bar of California.

11  These records are also appropriate for judicial notice.  Cty. of Santa Clara v. Trump, 267 F. Supp.

12  3d 1201, n. 11 (N.D. Cal. 2017).  Defendants' requests for judicial notice are therefore granted.

13          **B.      Plaintiff's claims against the State Defendants are barred by the doctrine of**

14                  **sovereign immunity.**

15          Plaintiff's section 1983 and ADA claims against the State Defendants should be dismissed

16  with prejudice under the doctrine of sovereign immunity.

17          In their motion to dismiss, the State Defendants argue, among other things, that the

18  Eleventh Amendment deprives this court of jurisdiction to adjudicate plaintiff's claims for

19  monetary damages against them.  (ECF No. 17 at 8.)  The Eleventh Amendment prevents federal

20  courts from entertaining "any suit in law or equity, commenced or prosecuted against one of the

21  United States by citizens of another state."  U.S. Const. amend. XI.  In other words, private

22  parties cannot sue states in federal court for monetary damages.  Board of Trustees of University

23  of Alabama v. Garrett, 531 U.S. 356 (2001).  For Eleventh Amendment purposes, certain state

24  officials and agencies are treated as the state itself if "the state is the real, substantial party in

25  interest."  Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99–100 (1984).  For

26  example, sovereign immunity extends to state governmental bodies when the agency acts as an

27  "arm of the state."  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

28  A state is not entitled to immunity if it has waived its immunity or if Congress has abrogated the

1  state's immunity through a valid exercise of its power.  Lavia v. Comm. of Pennsylvania, 224

2  F.3d 190, 195 (3d Cir.2000); Rodriguez v. Stevenson, 243 F. Supp. 2d 58, 62–63 (D. Del. 2002).

3       "The California Department of Social Services . . . and [associated] individual State

4  defendants, sued in their official capacity, are state actors for purposes of Eleventh Amendment

5  immunity."  Wittman v. Saenz, 108 F. App'x 548, 550 (9th Cir. 2004) (memorandum op.).  As

6  such, "claims for damages against the California Department of Social Services . . . and the

7  individual state defendants, acting in their official capacities, are barred by the Eleventh

8  Amendment."  Id.; see also Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989)

9  (explaining that neither a state nor a state agency is a "person" for purposes of 42 U.S.C. § 1983;

10  Doe v. Div. of Youth & Family Servs., 148 F.Supp.2d 462, 484 (D.N.J. 2001) (holding that New

11  Jersey Division of Youth and Family Services is a state agency for Eleventh Amendment

12  purposes); Rodriguez v. Stevenson, 243 F. Supp. 2d 58, 63 (D. Del. 2002) (holding that the

13  Delaware Division of Family Services and its officials "enjoy the immunity of the state.");

14  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh

15  Amendment bars suits for money damages in federal court against a state, its agencies, and state

16  officials in their official capacities.").

17       Thus, plaintiff's claims against the CDSS and FCO may not proceed unless the state has

18  waived its immunity or Congress has abrogated it—and neither of these conditions has been met.

19  First, "California has not waived its Eleventh Amendment immunity."  Shaw v. State of Cal. Dep't

20  of Alcoholic Beverage Control, 788 F.2d 600, 603-04 (9th Cir. 1986); see also Dittman v. State of

21  California, 191 F.3d 1020, 1025-26 (9th Cir. 1999) cert. denied, 530 U.S. 1261 (2000) ("The

22  State of California has not waived its Eleventh Amendment immunity with respect to claims

23  brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not

24  intended to abrogate a State's Eleventh Amendment immunity[.]").  Second, Congress has not

25  abrogated the states' immunity for claims under section 1983 or the ADA. See Quern v. Jordan,

26  440 U.S. 332, 345 (1979); Demshki v. Monteith, 255 F.3d 986, 989 (9th Cir. 2001).  Because the

27  California's immunity has not been waived or abrogated, plaintiff's claims for monetary damages

28  against the State Defendants should be dismissed with prejudice.

6

1

2

   **C.    The First Amended Complaint fails to state a claim under Title II of the ADA against any defendant.**

3    The First Amended Complaint purports to assert a claim for discrimination under Title II

4  of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.  (ECF No. 5.)  Title II of the

5  ADA prohibits discrimination on the basis of a disability in the programs, services or activities of

6  a public entity.  42 U.S.C. § 12131.  Federal regulations require a public entity to "make

7  reasonable modifications in policies, practices, or procedures when the modifications are

8  necessary to avoid discrimination on the basis of disability, unless the public entity can

9  demonstrate that making the modifications would fundamentally alter the nature of the service,

10  program, or activity." 28 C.F.R. § 35.130(b)(7).

11    The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an

12  individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the

13  benefit of some public entity's services, programs, or activities; (3) the plaintiff was either

14  excluded from participation in or denied the benefits of the public entity's services, programs or

15  activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,

16  denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v.

17  Davis, 295 F.3d 890, 895 (9th Cir. 2002).  The ADA defines "disability" as: (A) a physical or

18  mental impairment that substantially limits one or more of the major life activities of such

19  individual; (B) a record of such an impairment; or (C) being regarded as having such an

20  impairment.  Id. (citing 42 U.S.C. § 12102(2) (1994)).

21    Here, the First Amended Complaint fails to state a plausible ADA claim against any of the

22  defendants.  To the extent that plaintiff asserts the ADA claim against individuals who are not

23  alleged to have acted on behalf of a public entity, the claim fails as a matter of law, because Title

24  II of the ADA applies only to public entities.  42 U.S.C.A. § 12131(1) ("'[P]ublic entity' means

25  "any State or local government [or] any department, agency, special purpose district, or other

26  instrumentality of a State or States or local government . . .'").  Robin Seneka and the Attorney

27  ////

28  ////

7

1   Defendants are not public entities under the statute,[1] and thus plaintiff's ADA claims against them
2   should be dismissed with prejudice.

3          Similarly, plaintiff's allegations against the remaining defendants are too vague and
4   conclusory to state an ADA claim.  The First Amended Complaint does not identify the specific
5   disability that plaintiff allegedly suffers from, let alone how the impairment substantially limits a
6   major life activity.  Nor does the First Amended Complaint clearly identify the specific public
7   service or program from which plaintiff was allegedly excluded or denied services.  Finally, the
8   First Amended Complaint does not allege any causal link—i.e., that the discrimination was due to
9   the disability.  Accordingly, plaintiff's ADA claim is insufficiently pleaded.  The claim should be
10  dismissed without prejudice as to Yolo County, City of Woodland Police Department, Yolo
11  County Child Welfare Services, Commission on Judicial Performance, Marissa Green, April
12  Godwin, Salaam Shabazz, Cate Giacopuzzi-Rotz, Rebekah Heinenberger, Amanda Ekman,
13  Jennie Pettet, Cori Chapin, Alexandria Nelson, Breanna Kraft, Valerie Zeller, Karleen Jackowski,
14  Meghan Morris, Erica Jimenez, Gina Shabazz, Christina Maciel, Josefina Elliott, Brenda Gage,
15  Josette Fair, Gregory Elliott, Stephen Guthrie, Jeffrey Moe, Jen Magee, Gary Sandy, and Ken
16  Hiatt.

17          **D.      The First Amended Complaint fails to state a claim under 42. U.S.C. § 1983**
18                  **against the individual defendants.**

19          The First Amended Complaint purports to assert claims for civil rights violations against
20  all defendants, pursuant to 42 U.S.C. § 1983.  (ECF No. 5.)   The Civil Rights Act provides as
21  follows:

22              Every person who, under color of any statute, ordinance, regulation,
                custom, or usage, of any State or Territory or the District of
23              Columbia, subjects, or causes to be subjected, any citizen of the
                United States or other person within the jurisdiction thereof to the
24              deprivation of any rights, privileges, or immunities secured by the
                Constitution and laws, shall be liable to the party injured in an action
25              at law, suit in equity, or other proper proceeding for redress ....

26  42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely

27

28  _____
    [1] See section IV.D.i., infra.

                                        8

1    provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490

2    U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also

3    Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los

4    Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir.

5    2012).

6         To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted

7    under color of state law and (2) the defendant deprived her of rights secured by the Constitution

8    or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also

9    Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of

10   state law"). The court will discuss plaintiff's section 1983 allegations against each defendant in

11   turn.

12                    i.        Robin Seneka and the Attorney Defendants

13        Plaintiff's allegations against Robin Seneka and the Attorney Defendants show that these

14   defendants did not act "under color of state law," and thus the section 1983 claims against them

15   should be dismissed with prejudice. Because section 1983 requires a defendant to act "under

16   color of state law," the statute generally applies only to state actors, not private parties. Rendell-

17   Baker v. Kohn, 457 U.S. 830, 837 (1982) (citations omitted). But a private party can be deemed a

18   state actor under certain circumstances. The Ninth Circuit recognizes four tests to determine

19   whether a private party acted under color of state law: (1) public function; (2) joint action; (3)

20   governmental compulsion or coercion; and (4) governmental nexus. Kirtley v. Rainey, 326 F.3d

21   1088, 1092 (9th Cir. 2003). "Satisfaction of any one test is sufficient to find state action, so long

22   as no countervailing factor exists." Id. (quoting Lee v. Katz, 276 F.3d 550, 554 (9th Cir. 2002)).

23        Plaintiff's allegations, taken as true, do not support a conclusion that Robin Seneka or the

24   Attorney Defendants acted under color of state law. First, these defendants are not state actors

25   under the public function test. "Under the public function test, when private individuals or groups

26   are endowed by the State with powers or functions governmental in nature, they become agencies

27   or instrumentalities of the State and subject to its constitutional limitations." Lee, 276 F.3d at

28   554–55 (internal quotation marks omitted). The public function test is satisfied only on a

9

1   showing that the function at issue is "both traditionally and exclusively governmental."  Id. at

2   555.  Here, Robin Seneka is not alleged to have performed any governmental function.  And

3   although the Attorney Defendants were court-appointed, courts have held that a court-appointed

4   attorney's representation of a client is not "traditionally and exclusively governmental" for

5   purposes of the public function test.  See Polk County v. Dodson, 454 U.S. 312 (1981) (holding

6   that a court-appointed defense attorney does not act under color of state law when performing a

7   lawyer's traditional functions as counsel); Kirtley, 326 F.3d at 1096 (holding that a court-

8   appointed guardian of a minor does not have powers that are governmental in nature);

9   Malachowski v. City of Keene, 787 F.2d 704 (1st Cir. 1986) (holding that a private attorney

10  acting as court-appointed counsel for a minor in a state juvenile delinquency proceeding was not

11  acting under color of state law and thus could not be sued by the minor's parents under section

12  1983).  Thus, the public function test is not satisfied.

13        Second, the defendants do not satisfy the joint action test.  Under the joint action test,

14  courts consider whether "the state has so far insinuated itself into a position of interdependence

15  with the private entity that it must be recognized as a joint participant in the challenged activity."

16  Kirtley, 326 F.3d at 1093.  "This occurs when the state knowingly accepts the benefits derived

17  from unconstitutional behavior."  Id.  Here, the state did not derive benefits from the actions of

18  Robin Seneka or the Attorney Defendant.  Although the Attorney Defendants were appointed, and

19  presumably compensated, by the state, the benefit of the attorneys' services flowed to their

20  respective clients, not to the state.  Id. ("Although a guardian is appointed, compensated, subject

21  to qualification, and regulated by the state . . . the intended benefits of the guardian 'flow directly

22  to' the child, in whose interests the guardian must act."); see also Parks Sch. of Bus., Inc. v.

23  Symington, 51 F.3d 1480, 1486 (9th Cir.1995) (finding that no joint action exists where "benefits

24  of [state-law designated loan guarantor] flow directly to students, not to the state itself," even

25  while "in a broad sense" conferring public benefits). Thus, the joint action test does not apply.

26        Third the "nexus" test is not satisfied.  "Under the close-nexus test, plaintiff must allege

27  the specific conduct at issue and sufficient facts of such a close nexus between the State and the

28  challenged action that seemingly private behavior may be fairly treated as that of the State itself."

10

1  Lofthus v. Long Beach Veterans Hosp., 214 F. Supp. 3d 908, 915 (C.D. Cal. 2016).  Plaintiff

2  does not allege any facts showing a nexus between the state and Robin Seneka.  And the Attorney

3  Defendants' conduct, which allegedly consisted of representing their respective clients, does not

4  establish the requisite nexus.  Thus, the nexus test is not met.

5        Finally, the "compulsion" test is not satisfied.  The compulsion test considers whether the

6  coercive influence or "significant encouragement" of the state effectively converts a private

7  action into a government action.  See generally Sutton, 192 F.3d at 836–37 (canvassing

8  applications of the compulsion test involving the actions of private parties required under law or

9  regulation).  Again, attorneys—even court-appointed ones—function independently of the court,

10  exercising advocacy obligations that are, by law, to the client, not the state.  Thus, the Attorney

11  Defendants were not under such government compulsion that they acted on behalf of the state.

12  Kirtley v. Rainey, 326 F.3d 1088, 1094 (9th Cir. 2003).  Plaintiff similarly makes no allegation

13  indicating that Robin Seneka acted under government compulsion.  Thus, this test is not satisfied.

14        Accepting plaintiff's allegations as true, neither Robin Seneka nor the Attorney

15  Defendants can be considered to have acted "under color of state law."  Accordingly, plaintiff's

16  section 1983 claims against them fail on their face and should be dismissed with prejudice.

17        ii.      The City and County Officials

18        The First Amended Complaint also fails to state a section 1983 claim against the City and

19  County officials, because plaintiff does not sufficiently allege that the officials caused plaintiff to

20  suffer a deprivation of her constitutional or federal rights.

21        1.      Josette Fair

22        Plaintiff alleges that Fair is a City of Woodland police officer.  The First Amended

23  Complaint alleges that Fair was present when CWS "seized plaintiff's children and removed them

24  from the home."  (ECF No. 5 ¶¶ 79-80.)  It further alleges that Fair, along with another

25  unidentified officer, drove plaintiff to Woodland Memorial Hospital and "sign[ed] plaintiff into a

26  5150 psychiatric hold . . . without justification."  Id. ¶ 81-84.  It alleges that Fair and other

27  officers "did not follow due process for 5150s, including allowing Plaintiff to enter her residence

28  to get her belongings and make a phone call . . ."  Id.

California Welfare and Institutions Code § 5150 authorizes peace officers to take into custody any person the officer has probable cause to believe "is a danger to others, or to himself as a result of mental disorder." Palter v. City of Garden Grove, 237 F. App'x 170, 171–72 (9th Cir. 2007). The statute further authorizes officers to place the person at a county-designated facility for "72–hour treatment and evaluation" if such a determination is made. Probable cause exists if a state of facts is known to the officer "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself." Heater v. Southwood Psychiatric Center, 42 Cal. App. 4th 1068, 1080, 49 Cal.Rptr.2d 880, 887 (Cal. Ct. App.1996) (quoting People v. Triplett, 144 Cal. App. 3d 283, 287–88, 192 Cal. Rptr. 537 (Cal.1983)). "In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." Id. A plaintiff may bring a claim under section 1983 for wrongful detention and psychiatric evaluation pursuant to section 5150.[2] See Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir. 2007).

Construing plaintiff's allegations liberally, plaintiff appears to be alleging that Fair lacked probable cause to exercise her authority to detain plaintiff under section 5150. The factual allegations supporting this theory of liability, however, are too vague and conclusory to make the claim against Fair is plausible, as opposed to merely possible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff must allege specific, nonconclusory factual matter that plausibly indicates Fair lacked probable cause, or otherwise failed to follow proper procedure, under section 5150.

### 2. Gregory Elliott

Plaintiff alleges that Elliott is a City of Woodland police officer. The First Amended Complaint alleges that Elliott was verbally hostile towards plaintiff when plaintiff asked if he

---

[2] Welfare and Institutions Code section 5278 provides that an individual authorized to detain a person pursuant to section 5150 "shall not be held . . . liable for exercising this authority in accordance with the law." Thus, this statutory immunity only applies if the detention was in accordance with the law. See Dorger v. City of Napa, No. 12-CV-00440-WHO, 2013 WL 5804544, at *11 (N.D. Cal. Oct. 24, 2013).

12

1    could investigate CWS. (ECF No. 5 ¶ 248.)  Assuming these allegations are true, they do not

2    establish that Elliott caused plaintiff to suffer a deprivation of her federal rights.

3                              3.      Stephen Guthrie

4           Plaintiff alleges that Guthrie is a City of Woodland police officer.  The First Amended

5    Complaint alleges that Guthrie was present during the March 28, 2019 "seizure" of the minors,

6    that Guthrie knew the WPD and CWS were violating plaintiff's rights, and that Guthrie did not

7    intervene to stop the deprivation of rights.  (ECF No. 5 ¶ 82.)  Although bystander officers have a

8    duty to intervene when a fellow officer uses excessive force, the bystander officer must have

9    perceived the abuse and possessed time to react.  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th

10   Cir. 2000).  The First Amended Complaint makes only conclusory, nonspecific allegations of

11   "deprivations of rights," and it does not allege that Guthrie had perceived the deprivations and

12   had time to react.  It fails to allege a plausible claim against Guthrie.

13          In addition, the First Amended Complaint alleges that plaintiff asked Guthrie "what kind

14   of warrant they used to detain her" during the initial seizure, and Guthrie responded that "it was a

15   new kind of warrant . . . that CWS had a copy of it," and it was not WPD's concern.  Id. ¶ 230.  It

16   further alleges that plaintiff subsequently sought clarification from Guthrie regarding this "new

17   kind of warrant," but that Guthrie did not return her emails or phone calls.  Id. ¶ 231.  Assuming

18   plaintiff intends to allege that her rights were violated by Guthrie's failure to show her the

19   warrant executed on March 28, 2019, her allegations do not establish a deprivation of rights.

20   Officers are not required to show a defendant a copy of a warrant prior to executing it.  See

21   Saunders v. Knight, No. CVF045924 LJO WMW, 2007 WL 3482047, at *12 (E.D. Cal. Nov. 13,

22   2007).  Thus, even accepting plaintiff's allegations are true, they do not establish that Guthrie

23   caused plaintiff to suffer a deprivation of her federal rights.

24                              4.      Jeffrey Moe

25          Plaintiff alleges that Moe is a City of Woodland police officer.  The First Amended

26   Complaint alleges that Moe was present when Mr. Seneka attempted to take his belongings from

27   the house.  (ECF No. 5 ¶ 24.)  It alleges that Moe told Mr. Seneka, "her eyes will open once you

28   move out."  Id. ¶ 241.  Assuming these allegations are true, they do not establish that Moe caused

                                            13

1    plaintiff to suffer a deprivation of her federal rights.

2                               5.    Salaam Shabazz

3           Plaintiff alleges that Shabazz is a CWS social worker.  The First Amended Complaint

4    alleges that on December 14, 2018, Shabazz "began a barrage of texts and phone calls insisting

5    plaintiff produce Minors" for an interview, in light of allegations received regarding plaintiff's

6    "Facebook posts," and that his "constant bombardment" violated plaintiff's Fourteenth

7    Amendment rights.  (ECF No. 5 ¶¶ 55, 64.)  It alleges that Shabazz committed coercion by

8    threatening to get a signed warrant from a judge if plaintiff did not agree to meet him with the

9    minors.  Id. ¶ 57.   It alleges that Shabazz violated plaintiff's Fourth and Fourteenth Amendment

10   rights by pounding loudly on plaintiff's door and shining lights into her residence, on March 5,

11   2019.  Id. ¶ 72.  It alleges that Shabazz lied about plaintiff in a Detention Report.  Id. ¶ 99.

12   Plaintiff's allegations against Shabazz are insufficient to establish that Shabazz caused plaintiff to

13   suffer a deprivation of her federal rights.

14                               6.    Breanna Kraft

15          Plaintiff alleges that Kraft is a CWS social worker and Shabazz's supervisor. (ECF No. 5

16   ¶ 58.)  The First Amended Complaint's only allegations concerning Kraft are that Kraft asked

17   plaintiff questions over the phone about unenrolling the minors from the gymnastics team, and

18   that Kraft seemed satisfied with plaintiff's answers.  Id.  These allegations, if true, do not state a

19   claim against Kraft for a constitutional violation.

20                               7.    Jesus Leyva

21          Plaintiff alleges that Leyva is a CWS social worker.  The First Amended Complaint's only

22   allegations concerning Leyva are that Leyva requested two in-person interviews with the minors.

23   (ECF No. 5 ¶ 48-51.)  These allegations, taken as true, do not state a claim against Leyva for a

24   constitutional violation.

25                               8.    Robin Palmer

26          Plaintiff alleges that Palmer is a CWS social worker.  The First Amended Complaint's

27   only allegation concerning Palmer is that Palmer informed plaintiff that parents are not notified

28   "of the case process."  (ECF No. 5 ¶ 51.)  These allegations, taken as true, do not state a claim

                                              14

against Palmer for a constitutional violation.

### 9.   Alexandria Nelson

Plaintiff alleges that Nelson is a CWS social worker and supervisor.  The First Amended Complaint alleges that Nelson failed to return plaintiff's phone calls, informed her about the minor's living arrangements, and was present during the "seizure" of the minors on March 28, 2019.  (ECF No. 5 ¶¶ 63, 89, 92.)  These allegations, taken as true, do not state a claim against Chapin for a constitutional violation.

### 10. Cori Chapin

Plaintiff alleges that Chapin is a CWS social worker.  The First Amended Complaint alleges that Chapin refused to discuss the minor's education with plaintiff and "did not allow [the] minors to continue in the classes."  (ECF No. 5 ¶¶ 138.)  These allegations, taken as true, do not state a claim against Nelson for a constitutional violation.

### 11. Valerie Zeller

Plaintiff alleges that Zeller is a CWS social worker.  The First Amended Complaint alleges that Zeller suggested to the minors that they would end up stupid if the minors did not go to public school.  (ECF No. 5 ¶¶ 147-150.)  It alleges that Zeller laughed at plaintiff when plaintiff suggested that minors would be allowed to return home to plaintiff, after plaintiff's evaluation.  And it alleges that when plaintiff attempted to discuss minor's education with Zeller, Zeller would not engage and became hostile and rude toward plaintiff.  (ECF No. 5 ¶¶ 138.)  These allegations, taken as true, do not state a claim against Zeller for a constitutional violation.

### 12. Jen Magee

Plaintiff alleges that Magee was an attorney representing CWS in the state court dependency cases.  The First Amended Complaint alleges that Magee badgered a witness friendly to plaintiff and said that "people with personality disorder[s] rarely get better and can't change."  (ECF No. 5 ¶ 159.)  These allegations, taken as true, do not state a claim against Magee for a constitutional violation.

### 13. Meghan Morris

Plaintiff alleges that Morris is a CWS social worker and Zeller's supervisor.  The First

Amended Complaint alleges that when plaintiff contacted Morris about Zeller's poor job performance, Morris was dismissive of plaintiff and deprived plaintiff "of per parental medical rights and her Fourteenth Amendment Rights."  (ECF No. 5 ¶ 168.)  The allegations against Morris, taken as true, do not state a claim for a constitutional violation.

### 14. Jennie Pettet

Plaintiff alleges that Pettet is a CWS Branch Director.  The First Amended Complaint alleges that plaintiff contacted Pettet about her "concerns with due process and the deprivation of her and Minors' civil rights," but plaintiff either did not get a response or received a vague response that plaintiff considered inadequate. (ECF No. 5 ¶¶ 170, 201.)  The allegations against Pettet, taken as true, do not state a claim for a constitutional violation.

### 15. Karleen Jackowski

Plaintiff alleges that Jackowski is an interim CWS Branch Director.  The First Amended Complaint alleges that plaintiff contacted Jackowski and Morris via email "to complain that she has not seen Minors in a month and missed KS' birthday." (ECF No. 5 ¶ 185.)  Morris responded that a meeting was being scheduled in a library.  Plaintiff alleged that she informed Jackowski that this venue was inadequate, but Jackowski ignored the complaint.  The allegations against Jackowski, taken as true, do not state a claim for a constitutional violation.

### 16. Amanda Ekman ("AJ")

Plaintiff alleges that AJ is a CWS social worker.  The First Amended Complaint alleges the following:

> AJ insisted on public places for visits, questioning if Plaintiff "ever went out in public" as if that proved Plaintiff did not need accommodation. AJ then threatened that Plaintiff could visit Minors "in the ER". AJ told Plaintiff that in order to get her kids back she was required to take anti-psychotic medication and AJ wrote in the court report that Plaintiffs doctor recommended anti-psychotic medication, which is not only untrue but Plaintiff never consented to her private medical information being disclosed. Plaintiff brought up wanting to see Minors for the upcoming holidays and getting them back home and AJ responded, "if your boys ever come home". No plans were made for visitations.

(ECF No. 5 ¶ 199.)  These allegations against AJ, taken as true, do not state a claim for a constitutional violation.

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 17. Josefina Elliott

Plaintiff alleges that Josefina is a "Visitation Monitor."  (ECF No. 5 ¶ 29.)  The First Amended Complaint alleges that Josefina was "intrusive" during two of plaintiff's visits with the minors. Id. ¶ 231.  Plaintiff further alleges that she "was having difficulty with Josefina, who kept ending her calls if Plaintiff tried in any way to use parenting words, like 'take vitamins.'"  Id. ¶ 246.  Plaintiff also alleges that on Mother's Day 2020, Josefina was absent for an arranged call, causing plaintiff to miss "a holiday with Minors with no explanation which is required by law for Monitors."  Id.  These allegations against Josefina, taken as true, do not establish a plausible violation of plaintiff's constitutional or federal rights.

### 18. Marissa Green

Plaintiff alleges that Green is a CWS social worker.  The First Amended Complaint alleges that plaintiff was required to "pester" Green to motivate Green to find a suitable visitation location. (ECF No. 5 ¶ 232.)  The allegations against Green, taken as true, do not state a claim for a constitutional violation.

### 19. April Godwin

Plaintiff alleges that April is a CWS social worker.  The First Amended Complaint alleges that April was difficult to get ahold of and was "extremely abusive, vindictive, unpleasant, and retaliatory towards Plaintiff." (ECF No. 5 ¶¶ 247, 251.)  It alleges that "April punished Plaintiff and Minors when Plaintiff asked KS to stop playing 40 hours per week of video games." Id.  It alleges that "April claimed Plaintiff was negative with Minors, and [that plaintiff] could not know how many hours they play video games.  Id.  It alleges that "April did not believe or expect [plaintiff] to have any knowledge of what Minors were doing at all."  Id.  It alleges that April reprimanded and interrupted plaintiff during phone calls with the minors.  Id. ¶ 257.  It alleges that April was rude to plaintiff in text messages.  Id. ¶¶ 263-266.  The allegations against April, taken as true, do not state a claim for a constitutional violation.

### 20. Cate Giacopuzzi-Rotz

Plaintiff alleges that Cate Giacopuzzi-Rotz is a CWS social worker.  The First Amended Complaint alleges that while Mr. Seneka was attempting to remove items from plaintiff's home,

1   Giacopuzzi-Rotz "asked Mr. Seneka to leave the items he was trying to remove."  (ECF No. 5

2   ¶ 240.)  The allegations against Giacopuzzi-Rotz, taken as true, do not state a claim for a

3   constitutional violation.

4   <center>21. Gina Shabazz, Christina Maciel, and Erica Jiminez</center>

5       Plaintiff alleges that Gina Shabazz, Christina Maciel, and Erica Jiminez are CWS social

6   workers.  (ECF No. 5 ¶¶ 24, 25, 28.)   The First Amended Complaint is otherwise devoid of any

7   allegations against these defendants.  Thus, plaintiff has not stated a section 1983 claim against

8   them.

9       **E.      The First Amended Complaint fails to state a claim under 42. U.S.C. § 1983**

10          **against the City of Woodland or Yolo County.**

11      The First Amended Complaint fails to state a section 1983 claim against the City of

12  Woodland and Yolo County, because plaintiff does not allege a basis for municipal liability.  A

13  local government may be liable for an injury under section 1983 under three possible theories.

14  Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018).  First, a local government

15  may be liable if "execution of a government's policy or custom, whether made by its lawmakers

16  or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the

17  injury."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  Second,

18  a local government can fail to train employees in a manner that amounts to "deliberate

19  indifference" to a constitutional right, such that "the need for more or different training is so

20  obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

21  policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

22  City of Canton v. Harris, 489 U.S. 378, 390 (1989).  Third, a local government may be held liable

23  if "the individual who committed the constitutional tort was an official with final policy-making

24  authority or such an official ratified a subordinate's unconstitutional decision or action and the

25  basis for it."  Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097 (9th Cir. 2013).

26      Here, the First Amended Complaint lacks allegations that support any of the three theories

27  of municipal liability.  It does not allege that the City of Woodland or Yolo County had an

28  unlawful policy or custom.  It does not allege that the City of Woodland or Yolo County failed to

<center>18</center>

1    train its employees properly.  And it does not allege that the individual who committed the

2    constitutional violation was an official with final policy-making authority or that such official

3    ratified a subordinate's violation.  Accordingly, the First Amended Complaint fails to state a

4    section 1983 claim against the City of Woodland and Yolo County.

5           **F.**     **The First Amended Complaint fails to establish that plaintiff is entitled to**

6                      **relief under 28 U.S.C. §§ 1443 and 1446.**

7           The caption of the First Amended Complaint indicates that plaintiff seeks an "injunction

8    for removal of civil action" under 28 U.S.C. §§ 1443 and 1446.  (ECF No. 5.)  28 U.S.C. section

9    1443 permits the removal of civil actions commenced in state court against any person who is

10   denied or cannot enforce in state courts a right under any federal civil rights law.  Plaintiff does

11   not identify the state court action that would be subject to removal under section 1443, nor does

12   she allege that the requirements for removal under section 1443 are met.  To the extent she

13   intends to request removal of her dependency proceedings, there is no basis for federal

14   jurisdiction over those proceedings.  Plaintiff's request for removal under 28 U.S.C. section 1446

15   likewise fails.  Section 1446 sets forth the procedure for removal of state court actions; it does not

16   create a substantive basis for removal.  Accordingly, plaintiff's removal requests should be

17   denied.

18          **G.**     **The First Amended Complaint fails to establish that plaintiff is entitled to**

19                     **relief under California Code of Civil Procedure § 397.5.**

20          The caption of the First Amended Complaint indicates that plaintiff seeks relief under

21   California Code of Civil Procedure § 397.5.  That section provides:

22               In any proceeding for dissolution or nullity of marriage or legal

23               separation of the parties under the Family Code, where it appears that
                 both petitioner and respondent have moved from the county

24               rendering the order, the court may, when the ends of justice and the
                 convenience of the parties would be promoted by the change, order

25               that the proceedings be transferred to the county of residence of
                 either party.

26   Cal. Civ. Proc. Code § 397.5 (West).  This is a purely procedural statute applicable only to state

27   court proceedings arising under the California Family Code.  It does not provide plaintiff with a

28   means for relief in federal court.  Accordingly, plaintiff's transfer request should be denied.

1

**H.     The First Amended Complaint fails to establish that plaintiff is entitled to**

2

**injunctive relief under Federal Rule of Civil Procedure 65.**

3        The First Amended Complaint also seeks a temporary restraining order and preliminary

4   injunction: (1) barring Mr. Seneka or any of his relatives or friends from coming within 100 feet

5   of plaintiff; (2) barring Mr. Seneka from demanding servitude from plaintiff; (3) barring Mr.

6   Seneka from slandering or defaming plaintiff to any parties; (4) "barring CWS, WPD, and

7   Sherriff from harassment and engaging in policies, practices, and conduct complained of herein;"

8   (5) barring "CWS, or anyone connected to CWS for the purposes of harassment, from contacting

9   or coming within 100 feet" of plaintiff; (6) "dissolving the restraining order by Mr. Seneka,

10  including removing plaintiff's name from CLETS;" and (7) ordering Mr. Seneka to complete

11  parenting classes and undergo psychological evaluations.  (ECF No. 5 at 44-45.)

12       The substantive standard for issuing a temporary restraining order is identical to the

13  standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush

14  & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001); Lockheed Missile & Space Co. v. Hughes Aircraft,

15  887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  A preliminary injunction is a matter of equitable

16  discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that

17  the plaintiff is entitled to such relief."  Winter v. Natural Resources Defense Council, Inc., 555

18  U.S. 7, 22 (2008).  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is

19  likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

20  preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

21  the public interest."  Id. at 20.  Alternatively, an injunction could issue where "the likelihood of

22  success is such that serious questions going to the merits were raised and the balance of hardships

23  tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two

24  Winter factors.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir.

25  2011).  Under either standard, the plaintiff bears the burden of making a clear showing on these

26  elements and on entitlement to the extraordinary remedy of preliminary injunctive relief.  Earth

27  Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010).

28       Here, the court finds that plaintiff has not made a clear showing that she is entitled to

1    injunctive relief.  She has not shown that she is likely to succeed on the merits of her claims, that

2    she is likely to suffer irreparable harm without the injunctive relief, that the balance of interests

3    tips in her favor, or that the injunction is in the public interest.  Accordingly, plaintiff's request

4    for injunctive relief should be denied.

5    **I.        The First Amended Complaint fails to establish that plaintiff is entitled to**

6    **declarative relief.**

7        The First Amended Complaint seeks "a Declaratory Judgment with an opinion that

8    portions of [the California Welfare & Institutions Code §§] 300(a)(b)(c) are unconstitutional and

9    void for vagueness."  (ECF No. 5 at 44.)  Plaintiff alleges that the statute "has parts which are

10   vague and unconstitutional, without notice of what constitutes prohibitive behavior . . . . These

11   parts of the statute fall under the Void-for-Vagueness Doctrine in the Due Process of Clause of

12   the Fourteen Amendment of the United States Constitution."  Id. ¶ 110.

13       Under the due process provisions of the constitution, parents in dependency proceedings

14   are entitled to notice of the conduct prohibited by the dependency scheme.  This means that the

15   dependency statutes may not forbid or require conduct in terms so vague "that men of common

16   intelligence must necessarily guess at its meaning and differ as to its application . . . ."  See In re

17   Mariah T., 159 Cal. App. 4th 428, 434, 71 Cal. Rptr. 3d 542, 546 (2008) (holding that California

18   Welfare & Institutions Code § 300(a) is not unconstitutionally vague).

19       The First Amended Complaint, however, fails to state a claim for a declaratory judgment.

20   Plaintiff vaguely alleges that "portions" or "parts" of the California Welfare & Institutions Code

21   §§ 300(a),(b), and (c)[3] are unconstitutional.  She does not identify any specific language in the

22   statutory provisions that she contends is unconstitutional.  Because the First Amended Complaint

23   fails to provide meaningful guidance as to plaintiff's constitutional challenge, her declaratory

24   judgment action should be dismissed.[4]

25   [3] Section 300 of the California Welfare & Institutions Code describes circumstances under which
     a child may be found to be a dependent child of the juvenile court.

26   [4] Because plaintiff's declaratory judgment claim is insufficiently pleaded, the court is currently

27   unable to evaluate whether "a substantial controversy" exists to establish subject-matter
     jurisdiction over the claim. See Tech. Licensing Corp. v. Technicolor USA, Inc., 800 F. Supp. 2d

28   1116, 1120 (E.D. Cal. 2011) (Subject matter jurisdiction in a declaratory judgment action thus

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    LEAVE TO AMEND

"A district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc); see also Gardner v. Marino, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

Here, the court finds that the following claims cannot be cured by the allegation of additional facts:

1.    All claims for monetary relief in the First Amended Complaint asserted against the State Defendants;

2.    All claims in the First Amended Complaint asserted against the Attorney Defendants and Robin Seneka;

3.    All claims in the First Amended Complaint seeking injunctive relief;

4.    All claims in the First Amended Complaint seeking a transfer of venue under California Code of Civil Procedure § 397.5; and

5.    All claims in the First Amended Complaint seeking removal of a state court action under 28 U.S.C. § 1443 and 1446.

Because these claims either fail as a matter of law or cannot be cured by the allegation of additional facts, it is recommended that they be dismissed with prejudice and without leave to amend.

The court finds that the following claims may possibly be cured by the allegation of additional facts:

1.    Plaintiff's claims under 42 U.S.C. § 1983 and Title II of the ADA against Yolo County, City of Woodland Police Department, Yolo County Child Welfare Services, Marissa Green, April Godwin, Salaam Shabazz, Cate Giacopuzzi-Rotz,

--------------------------------------------

depends on the existence of "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

1      Rebekah Heinenberger, Amanda Ekman, Jennie Pettet, Cori Chapin, Alexandria

2      Nelson, Breanna Kraft, Valerie Zeller, Karleen Jackowski, Meghan Morris, Erica

3      Jimenez, Gina Shabazz, Christina Maciel, Josefina Elliott, Brenda Gage, Josette

4      Fair, Gregory Elliott, Stephen Guthrie, Jeffrey Moe, Jen Magee, Gary Sandy, Ken

5      Hiatt, and the Commission on Judicial Performance; and

6      2.     Plaintiff's claim for a declaratory judgment.

7      Because these claims may be cured by amendment, it is recommended that they be

8 dismissed without prejudice and with leave to amend.

9      If the district court adopts these Findings and Recommendations, and if plaintiff opts to

10 file a new complaint, the new complaint shall:

11      1.     be captioned "Second Amended Complaint";

12      2.     be limited to 20 pages (not including any exhibits necessary to understand the

13              issues), double spaced with a font size of 12 Times New Roman (or equivalent);[5]

14      3.     set off each cause of action in a separate section that clearly identifies:

15            a.   the legal source of the claim (e.g., statute or common-law);

16            b.   the defendants against whom the claim is asserted (e.g., Claim I against

17               defendants A, B, and C; Claim II against defendants D, E, and F);

18            c.   the actions of each defendant that makes liability for the claim plausible;

19            d.   the harm plaintiff suffered as a result of defendants' actions;

20      4.     include a general background facts section to orient the reader only as necessary;

21      5.     refrain from alleging redundant, immaterial, or impertinent matters; and

22      6.     cure any other pleading deficiencies outlined in this order.

23      Plaintiff is advised that the court cannot rely on a prior complaint or other filing; plaintiff's

24 new complaint, if any, must contain a complete statement of her claims.  <u>See</u> Local Rule 220

25 (requiring an amended complaint to be complete in itself, without reference to any prior

26 pleading).  Moreover, if the district court allows plaintiff to amend her complaint, plaintiff is

27

28    [5] Pages exceeding the page limit will be stricken and will not be considered.

1  reminded that she is not required to do so.  If plaintiff determines she is unable or unwilling to

2  amend in compliance with the court's order, she instead may file a notice of voluntary dismissal

3  without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

4  **V.    CONCLUSION**

5       Accordingly,

6       IT IS HEREBY ORDERED that:

7       1.  Defendants' requests for judicial notice (ECF Nos. 8-2, 10-2) be granted;

8       IT IS HEREBY RECOMMENDED that:

9       1.      Defendants' motions to dismiss (ECF Nos. 8, 10, 11, and 12) be granted as

10              follows:

11                   i.  Plaintiff's ADA and section 1983 claims against the State of California,

12                       California Health and Human Resources, California Department of Social

13                       Services, California Foster Care Ombudsperson, the Attorney General of

14                       California, Robin Seneka, Whitney Kulp, Ashley Mooney, Natalie Moore,

15                       and Mikaela West be dismissed with prejudice;

16                   ii. Plaintiff's ADA and section 1983 claims against Yolo County, City of

17                       Woodland Police Department, Yolo County Child Welfare Services,

18                       Commission on Judicial Performance, Marissa Green, April Godwin,

19                       Salaam Shabazz, Cate Giacopuzzi-Rotz, Rebekah Heinenberger, Amanda

20                       Ekman, Jennie Pettet, Cori Chapin, Alexandria Nelson, Breanna Kraft,

21                       Valerie Zeller, Karleen Jackowski, Meghan Morris, Erica Jimenez, Gina

22                       Shabazz, Christina Maciel, Josefina Elliott, Brenda Gage, Josette Fair,

23                       Gregory Elliott, Stephen Guthrie, Jeffrey Moe, Jen Magee, Gary Sandy,

24                       and Ken Hiatt be dismissed without prejudice;

25                   iii. Plaintiff's request for an "Injunction for Removal of Civil Action" under

26                       28 U.S.C. §§ 1443 and 1446 be denied;

27                   iv. Plaintiff's request to transfer venue pursuant to California Code of Civil

28                       Procedure § 397.5 be denied;

24

1          v.   Plaintiff's claim for a temporary and preliminary restraining order be

2               denied; and

3          vi.  Plaintiff's claim for a declaratory judgment be dismissed without prejudice.

4          These findings and recommendations are submitted to the United States District Judge

5    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

6    days after being served with these findings and recommendations, any party may file written

7    objections with the court and serve a copy on all parties.  Such a document should be captioned

8    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9    shall be served on all parties and filed with the court within fourteen (14) days after service of the

10   objections.  Failure to file objections within the specified time may waive the right to appeal the

11   District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst,

12   951 F.2d 1153 (9th Cir. 1991).

13   Dated:  January 20, 2021

14                                                                _____

15                                                                CAROLYN K. DELANEY
                                                                  UNITED STATES MAGISTRATE JUDGE

16   17.1621.mtd

17

18

19

20

21

22

23

24

25

26

27

28